IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

USAA CASUALTY INSURANCE
COMPANY,

      Appellant,

v.

      Case No. 5D21-720
      LT Case No. 2018-CC-000974-20-P-S

CHRISTOS MIKROGIANNAKIS,

      Appellee.

_____/

Opinion filed July 22, 2022

Appeal from the County Court
for Seminole County,
James J. DeKleva, Judge.

Rebecca Delaney, Maria Pace and
Scott W. Dutton, of Dutton Law
Group, P.A., Orlando, for Appellant.

Chad A. Barr, of Chad Barr Law,
Altamonte Springs, for Appellee.

EISNAUGLE, J.

      USAA Casualty Insurance Company ("USAA") appeals a summary

judgment and final judgment for damages in favor of Christos

Mikrogiannakis. Section 627.736(5)(c), Florida Statutes (2014), establishes a thirty-five-day time limitation for the submission of invoices to a Personal Injury Protection ("PIP") insurer. We must decide whether an exception to this time limitation set forth in subsection (5)(c)(1) applies when the provider receives no PIP insurance information at all, as opposed to receipt of affirmative but erroneous information. We conclude that the plain language of the exception requires receipt of affirmative information. We therefore reverse.

**Facts and Procedural History**

Mikrogiannakis obtained medical treatment from Physical Medicine Pain Center, P.A. ("PMPC") after he was struck by a car while riding his bicycle. At his initial visit, Mikrogiannakis completed a registration form but listed only his contact information and the name of his lawyer. Although the form asked Mikrogiannakis for the name and address of a PIP insurer, he left that field blank. Mikrogiannakis then received treatment at PMPC over a period of several months.

PMPC submitted the invoices to USAA approximately eighteen months after treatment. As a result, USAA denied payment for failure to comply with section 627.736(5)(c)'s thirty-five-day time limitation. Mikrogiannakis then filed a petition for declaratory judgment and a claim for PIP insurance

2

benefits,[1] relying on an exception to the thirty-five-day time limitation applicable when a provider reasonably relies on erroneous PIP insurance information.

The parties filed dueling motions for summary judgment, each arguing entitlement to judgment based on section 627.736(5)(c). The trial court agreed with Mikrogiannakis, reasoning that the exception to the thirty-five-day time period applied because providing no PIP information was equivalent to providing "erroneous information." Accordingly, the trial court denied USAA's motion, granted Mikrogiannakis's motion, and entered a final judgment for damages in favor of Mikrogiannakis.

## Statutory Analysis

"In interpreting the statute, we follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'" *Forrester v. Sch. Bd. of Sumter Cnty.*, 316 So. 3d 774, 776 (Fla.

---

[1] USAA appears to argue on appeal that Mikrogiannakis lacked standing below. However, Mikrogiannakis received an assignment from PMPC, which appears in our record. USAA's standing argument on appeal is deficient because it fails to even acknowledge this assignment, let alone explain why the trial court's order denying USAA's motion to dismiss for lack of standing was in error or to otherwise explain why Mikrogiannakis lacks standing in light of the assignment. *See Cox v. Great Am. Ins. Co.*, 203 So. 3d 204, 205 (Fla. 4th DCA 2016) ("[O]n appeal the duty rests upon the appealing party to make error clearly appear." (citation omitted)).

5th DCA 2021) (quoting *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020)). To that end, "[w]hen the language of a statute is clear and unambiguous and conveys a clear and definite meaning, it must be given its plain and obvious meaning." *Weightman v. State*, 990 So. 2d 590, 592 (Fla. 5th DCA 2008) (citations omitted).[2] We are also mindful that, when interpreting a legal text, we must "arrive at a 'fair reading' of the text by 'determining the application of [the] text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.'" *Lab'y Corp. of Am. v. Davis*, 47 Fla. L. Weekly S134, S136 (Fla. May 26, 2022) (alteration in original) (quoting *Ham*, 308 So. 3d at 947); *see also MRI Assocs. of Tampa, Inc. v. State Farm Mut. Auto. Ins. Co.*, 334 So. 3d 577, 584 (Fla. 2021) (employing a "reasonable reading of the statutory text").

We conclude that section 627.736(5)(c) is unambiguous, and the exception to the thirty-five-day time period does not apply where a provider receives no information rather than "erroneous information." "We reach this conclusion by examining the text, context, and structure of the statute . . . ."

---

[2] We review the trial court's interpretation of a statute de novo. *BellSouth Telecomms., Inc. v. Meeks*, 863 So. 2d 287, 289 (Fla. 2003).

4

*Dungarani v. Benoit*, 312 So. 3d 126, 129 (Fla. 5th DCA 2020) (citation omitted).

Section 627.736(5)(c) provides, in pertinent part:

> With respect to any treatment or service, other than medical services billed by a hospital or other provider for emergency services and care as defined in s. 395.002 or inpatient services rendered at a hospital-owned facility, the statement of charges must be furnished to the insurer by the provider and may not include, and the insurer is not required to pay, charges for treatment or services rendered more than 35 days before the postmark date or electronic transmission date of the statement . . . .
>
> 1. If the insured fails to furnish the provider with the correct name and address of the insured's personal injury protection insurer, the provider has 35 days from the date the provider obtains the correct information to furnish the insurer with a statement of the charges. The insurer is not required to pay for such charges unless the provider includes with the statement documentary evidence that was provided by the insured during the 35-day period demonstrating that the provider reasonably relied on erroneous information from the insured and either:
>
> a. A denial letter from the incorrect insurer; or
>
> b. Proof of mailing, which may include an affidavit under penalty of perjury, reflecting timely mailing to the incorrect address or insurer.

§ 627.736(5)(c).

The statute requires a provider to submit invoices within thirty-five days of treatment and provides that the insurer is not required to pay any late

5

invoices. In this case, there is no dispute that the invoices were submitted more than thirty-five days after treatment.

Nevertheless, Mikrogiannakis attempts to seize upon the statutory exception to the rule which gives a provider, if the insured fails to provide correct PIP information, thirty-five days from the date the provider obtains the correct information. Specifically, Mikrogiannakis argues on appeal that PMPC received "erroneous information" because he left the field for insurance information blank despite having PIP coverage.

We reject Mikrogiannakis's interpretation of subsection (5)(c)(1) based upon the exception's plain language. Initially, we observe that the exception only applies where an insured "fails to furnish the provider with the correct name and address of the insured's personal injury protection insurer." In this case, PMPC did not have *any* name or address of an insurer within thirty-five days of treatment. In other words, PMPC had no information at all.

We readily acknowledge that Mikrogiannakis's interpretation of this phrase has some technical appeal. In some sense, Mikrogiannakis did "fail[]" to furnish [PMPC] with the correct name and address" of the insurer because he failed to complete the portion of the intake form relating to his PIP coverage. In that regard, he "fail[ed] to furnish" the correct information.

6

However, the "fair reading" method does not countenance a hyperliteral reading of a legal text. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 39 (1st Ed. 2012). Instead, as we observed above, the method considers the text from the perspective of how a "reasonable reader, fully competent in the language, would have understood the text at the time it was issued." *Davis*, 47 Fla. L. Weekly at S136 (citation omitted). "The endeavor requires aptitude in language, sound judgment, the suppression of personal preferences regarding the outcome, and, with older texts, historical linguistic research." Scalia & Garner, *Reading Law* at 33. Finally, a "fair reading" considers the purpose of the text, "gathered only from the text itself, consistently with the other aspects of its context." *Id.*

We doubt that a reasonable reader, given the context of the thirty-five-day time limitation, would interpret "fails to furnish the correct name and address" to include a situation where, as here, an insured fails to provide any information at all. Indeed, such an open-ended exception would seem to undermine section 627.736(5)(c)'s purpose—prompt submission of invoices within thirty-five days of treatment.

That said, if the statutory language ended there, this case might present a closer question. However, we must consider the entire statute, and subsection (5)(c)(1) contains a host of additional indicia of meaning.

For instance, to invoke the exception, a provider must submit "documentary evidence that was provided by the insured during the 35-day period demonstrating that the provider *reasonably relied* on erroneous information from the insured." § 627.736(5)(c)(1) (emphasis added). If there were any doubt about the meaning of subsection (5)(c)(1)'s reference to the insurer's "correct name and address," this language settles it because, if a provider has no information at all, there is nothing upon which to reasonably rely.

Yet, the statute does not end there. The exception also requires a provider to submit either a denial letter or proof of mailing to "the incorrect address or insurer" to prove the provider's reasonable reliance. This is further indication that the phrases "incorrect name or address" and "erroneous information," as used in this statute, necessarily mean *affirmative* misinformation. We fail to see how a provider could produce a denial letter or proof of mailing when the provider has no PIP insurance information at all.

Considering the entirety of the statute, as we must, the exception in subsection (5)(c)(1) is narrow and requires that a provider have affirmative

8

information concerning the insurer before the exception is even in play. As such, the exception does not apply here.

Given the undisputed summary judgment evidence, and the parties' dueling motions for summary judgment, we reverse the trial court's entry of summary judgment and final judgment for damages in favor of Mikrogiannakis and remand for entry of summary judgment in favor of USAA.

REVERSED AND REMANDED.

NARDELLA, J., concurs.
COHEN, J., concurs in result only, without opinion.